J-A13044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  T.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF:  M.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1529 WDA 2024 |

Appeal from the Order Entered October 18, 2024
In the Court of Common Pleas of Allegheny County
Orphans' Court at CP-02-AP-0000026-2024

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED:  June 17, 2025**

M.W. (Father) appeals from the order granting the petition of the Allegheny County Office of Children, Youth and Family (OCYF) and terminating his parental rights to T.F. (Child).[1]  We affirm.

Child was born in July 2017.  In July 2020, OCYF obtained custody of Child, and Child was placed in kinship foster care.[2]  In May 2022, Child was returned to Mother's care.  At that time, "Father was found to be in full compliance with the permanency plan.  The court permitted him to begin

---

[1] The order also terminated the parental rights of Child's mother, Ty.F. (Mother), who has not appealed.

[2] OCYF became involved due to inadequate parental supervision of Child and his brother, deplorable living conditions, and intimate partner violence (IPV). ***See*** Petition for Termination of Parental Rights (Petition), 3/20/24, at 3.

overnight visitation with [C]hild." Orphans' Court Opinion (OCO), 1/9/25, at 4.

Approximately four months later, in September 2022, OCYF obtained custody of Child for a second time, and Child was returned to kinship foster care. The orphans' court explained:

> A permanency review hearing was held on September 27th, 2022. The court ordered [C]hild to remain in foster care. Father was found to have made minimal progress because he was not attending a parenting program through Arsenal. The court ordered Father to complete the Arsenal Parenting Program. The court order further reflected that it would consider placing [C]hild with Father once he enrolled in the parenting program.

*Id.*

According to the orphans' court, the "most important goal for Father was to attend a parenting program." *Id.* at 9. During the ensuing 18 months, the court held regular permanency review hearings and found Father was noncompliant with his parenting goals.

On March 20, 2024, OCYF petitioned to terminate Father's parental rights. OCYF alleged that Child remained in "placement due to [] Father's failure to complete, or make sufficient progress on, the goals/outcomes outlined for him by OCYF or in court orders." Petition at 5. In particular,

> Father failed to attend scheduled individual and interactional evaluations on multiple dates. … Father was unsuccessfully discharged from the Arsenal parenting program for failure to attend; he has not provided documentation of engaging with another parenting program. Father was provided with information on multiple parenting programs, but he failed to enroll in those programs. OCYF ha[d] ongoing concerns about Father's ability to meet [Child's] day-to-day needs.

***Id.*** at 4.

The orphans' court held a two-day termination hearing on October 4 and 11, 2024. OCYF presented testimony from OCYF supervisor, Bryn Albee; social worker, Bobbie O'Donnell; and forensic psychologist, Beth Bliss. Father testified in opposition to termination. By order dated October 11, 2024, and docketed October 18, 2024, the orphans' court terminated Father's parental rights.

On November 13, 2024, Father filed a notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). In his concise statement, Father alleged that the orphans' court abused its discretion and/or erred because OCYF did not present clear and convincing evidence: 1) of grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8); and 2) that termination would best serve Child's needs and welfare pursuant to 23 Pa.C.S. § 2511(b). Father's Concise Statement, 11/13/24, at 2.

> However, in his brief, Father presents different questions:
>
> I. Whether or not the [orphans'] court erred in finding that reasonable efforts were made by OCYF?
>
> II. Whether or not the [orphans' c]ourt erred in finding that OCYF had satisfied the requirements relative to the family finding and that Father's parental rights should be terminated?

Father's Brief at 4.[3]

---

[3] Father has filed a brief and amended brief which are nearly identical and present the same questions. As neither brief is paginated, we have assigned appropriate page numbers.

Both OCYF and Child's counsel argue that the issues in Father's brief are waived because Father did not raise them in his concise statement; they also assert that the argument in Father's brief is undeveloped.[4] **See** OCYF's Brief at 18-19, Child's Counsel's Brief at 15-16. OCYF states:

> [I]n the statement of questions involved, the summary of argument, and argument sections of his brief, Father abandons the issues raised in his concise statement and instead argues that the court erred in finding that [O]CYF made reasonable efforts and that [O]CYF satisfied requirements related to family finding.
>
> ***
>
> Father's brief fails to include any relevant authority and instead focuses on dependency issues under the Juvenile Act rather than termination of parental rights issues…. Any argument by Father regarding the termination of his parental rights is poorly developed and does not allow for meaningful review.

OCYF's Brief at 18-19.

OCYF's description is accurate. Father emphasizes OCYF's obligation to "preserve the unity of the family" and "provide preventative and reunification services." Father's Brief at 10-11. Father cites boilerplate case law to support his claim that the evidence in support of termination "was not so clear and convincing." **Id.** at 11, **see generally id.** at 10-14. Father also refers to lacking "necessary items" for Child as "environmental factors" which do not reflect his inability to parent. **Id.** at 14. We agree that Father's issues are waived. Waiver is mandatory when issues are not included in a concise statement. **In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017). In

---

[4] OCYF and Child's counsel also argue that the orphans' court properly terminated Father's parental rights.

addition, this Court will not review claims that are undeveloped and unsupported by citations to relevant authority. *Id.* at 465.

Our disposition would not change in absence of waiver. When the orphans' court's findings are supported by the evidence, an appellate court may not disturb the ruling unless it has discerned an error of law or abuse of discretion. *Interest of M.E.*, 283 A.3d 820, 829 (Pa. Super. 2022). Unlike orphans' courts, "appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents." *In re S.P.*, 47 A.3d 817, 826 (Pa. 2012) (citation omitted).

The procedure for termination of parental rights is set forth in Section 2511. "Initially, the focus is on the conduct of the parent[, and the petitioner] must prove … that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa. Super. 2018) (citation omitted). "Only if the court determines that the parent's conduct warrants termination … does the court engage in the second part of the analysis pursuant to Section 2511(b)." *Id.* This Court "need only agree with [the orphans' court] as to any one subsection of [Section 2511(a), in addition to Section 2511(b),] to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Under Section 2511(a)(5), grounds for termination exist when:

(5) The child has been removed from the care of the parent by the court … for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(5).

Likewise, under Section 2511(a)(8), grounds for termination exist when:

(8) The child has been removed from the care of the parent by the court…, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8).

If a court finds grounds for termination under Section 2511(a), it then gives "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b).

Here, the orphans' court explained:

Both OCYF and the [d]ependency [c]ourt had concerns about Father's parenting abilities and his capacity to care for [C]hild on a full-time basis. [C]hild reported being hungry after visits and there were also concerns about Father's use of physical discipline. Due to these concerns, [OCYF] believed that Father needed further instruction on meeting the basic needs of [C]hild during visits. Additionally, Father was only visiting [C]hild on the weekends. He was never responsible for getting [C]hild to and from school while juggling his work schedule. When asked what his plan would be for doing this, he could not describe how he could accomplish this. OCYF made multiple referrals for parenting

- 6 -

programs. Father reported that his work schedule[] was [a] barrier to attending these programs. One of the programs had the capability to conduct virtual classes but Father still did not avail himself of this service. … Despite the case being open for over two years, Father never completed parenting classes.

Father has struggled to follow through with most of the goals set for him. The court recognizes that Father worked a full-time job and had time constraints. However, he reported periods in which he was not working or working significantly less. There was never any increased progress towards his goals during these periods. Father has no explanation for why he could not fit drug and alcohol treatment or parenting classes into his schedule. He reported that he did not do them because he didn't think he needed those services. Additionally, psychological evaluations were scheduled and rescheduled five times to accommodate Father. On the fifth scheduled date, which was specifically scheduled to accommodate Father's work schedule, he showed up so late that Dr. Bliss could not complete psychological testing. Father's failure to meaningfully engage in these evaluations was disruptive to case planning because OCYF did not know what, if any other services, Father needed to reunify with [C]hild. Father has not prioritized his court-ordered goals. In fact, Father has completely disregarded them for the last two years. This further reinforced the court's concerns about his ability to parent [C]hild on a full-time basis. The court had little hope that Father could get [C]hild to and from school, attend educational meetings[,] or schedule and attend routine medical and dental appointments. Dr. Bliss echoed this concern, testifying that she was not "sure how he could handle day-to-day parenting."

[T]his court considered a variety of factors in its best interest analysis. First, the court examined the nature of the bond between Father and [C]hild and the effect of severing this bond. The court also considered [C]hild's particular special needs and the relationship that he shared with his foster mother. Father's bond with [C]hild was explored by Dr. Bliss in her 2024 evaluation. She believed the bond to be limited but noted [C]hild was familiar with Father and comfortable in his presence. With respect to the effects of severing any potential bond, Dr. Bliss believed that it "could have an impact on him." However, she went on to opine that if [C]hild were in a healthy environment with a trusted caregiver, that any negative impact could be mitigated.

[C]hild has been in the care of [Ms. R.] since November 10th, 2023.  Prior to that[, C]hild was in three different foster homes and had been returned to Mother once.  [Ms. R.] is a maternal relative, and [C]hild's brother is also placed in her care. … Social [w]orker, Bobbie O'Donnell, has been to [Ms. R.'s] home and has visited [C]hild in the home.  Ms. O'Donnell reported that [Ms. R.] was doing an "excellent job" meeting [C]hild's educational and medical needs.  She further reported that [C]hild was recently placed on medication for anxiety and had "made a remarkable improvement this year with schooling[."]  [C]hild has been diagnosed with ADHD and receives additional services through the school to support his needs.  Ms. R[.] has ensured that [C]hild received needed medical and dental services when he was placed in her care.  In her most recent set of evaluations, Dr. Bliss reported that [C]hild and his brother appeared "happy and comfortable" playing with Ms. R[.] and that they appeared securely attached to her.  Ms. R[.] is a pre-adoptive placement.  The court finds that it would be detrimental to the best interests of [C]hild if he were to be removed from Ms. R[.]'s care.  Returning [C]hild to Father's care would not best suit [C]hild's developmental, physical, and emotional needs and welfare.

OCO at 9-11 (citations to case law and notes of testimony omitted).

Accordingly, in the absence of waiver, the record would support termination of Father's parental rights.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/17/2025